IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| **WENDY DRYS,** | * |
| Plaintiff, | * |
| v. | * Case No.: PWG 21-350 |
| **PRIMECARE MEDICAL, INC.,** | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

Wendy Drys, through counsel, brought this action against her former employer, PrimeCare Medical, Inc., alleging disability discrimination under the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't §§ 20-601 *et seq.*, interference with her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, and retaliation in violation of the FMLA. Compl., ECF No. 1. Pending is Defendant's Motion for Summary Judgment, ECF No. 27. I have reviewed the filings[1] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, I shall GRANT summary judgment to the Defendant.

### BACKGROUND

PrimeCare Medical, Inc. ("PrimeCare") provides medical, mental health, and dentistry services in jails and juvenile centers. Def.'s Stmt. Facts ¶ 1, ECF No. 27-3.[2] In 2016, PrimeCare

---

[1] Defendant's Motion for Summary Judgment, ECF No. 27; Plaintiff's Response in Opposition, ECF No. 30; Defendant's Reply, ECF No. 31; and the attached exhibits.

[2] I have cited the Defendant's Statement of Undisputed Material Facts, ECF No. 27-3, rather than the underlying documents, for convenience, but only to the extent that Plaintiff has not disputed the statement. *See* Pl.'s Resp. ¶¶ 1-12, ECF No. 30 (stating her position on each of Defendant's Statement of Facts). I note that it appears as if Plaintiff misstated her non-dispute in ¶ 6, since she refers to additional facts that raise a genuine issue of material fact. *Id.* ¶ 6. Therefore, I treated those statements as disputed.

acquired a contract to provide medical services at the Charles County Correctional Facility ("Correctional Facility") in La Plata, Maryland, and hired Plaintiff, Wendy Drys, as a Nurse Practitioner to continue providing services at the facility. *Id.* ¶¶ 2-3. Ms. Drys' employment offer letter stated that her continued employment was conditioned upon her maintaining a security clearance at the facilities in which she worked, and that revocation of her security clearance would be grounds for termination. *Id.* ¶¶ 5-6.³ Ms. Drys worked primarily at the Charles County facility, but she also worked at the St. Mary's County Detention Center after PrimeCare was awarded a contract at the St. Mary's facility. *Id.* ¶ 12, 14; Haskins Dep. 17, Pl.'s Resp. Ex. B, ECF No. 30-1.⁴

In June 2019, Ms. Drys informed PrimeCare's Director of Clinical Operations that she had a colon polyp, which required surgical removal. Def.'s Stmt. Facts ¶¶ 38-39. Ms. Drys requested the paperwork required for FMLA leave by email to Prime Care's Human Resource Generalist on June 13, 2019. *Id.* ¶ 42. She received an email with the FMLA paperwork attached on June 14, 2019, and she sent the completed FMLA paperwork by email to Human Resources on July 10, 2019. *Id.* ¶¶ 43-45. Ms. Drys requested a continuous leave from July 9, 2019 to August 9, 2019. *Id.* ¶ 46. Ms. Drys states that she also indicated that she would need intermittent FMLA leave, and she complained about not receiving any response to acknowledge that her request had been approved, although a letter was sent to her by email and certified mail on August 13, 2019.⁵ Drys Dep. 24-27, Drys Dep. Ex. 6, Def.'s Ex. A, ECF No. 27-5. On August 27, 2019, Ms. Drys followed

---

³ Ms. Drys already held a security clearance for the Charles County facility when she began working for PrimeCare. Defs.' Stmt. Facts ¶ 14. Without a security clearance, she would be unable to access the facility to perform her duties. *Id.* 13.
⁴ Todd Haskins is PrimeCare's Chief Operating Officer. Haskins Dep. 7. His transcript was also provided with Defendant's motion as Exhibit B, ECF No. 27-6.
⁵ It appears that the mailing address for the letter was incorrect, subsequently corrected, and the original letter was attached to an August 27, 2019 email to Ms. Drys. Drys Dep. Ex. 6, 7.

up by email asking if she needed to complete separate paperwork for intermittent leave and was advised that she would.  Drys Dep. Ex. 7.  On September 26, 2019, Ms. Drys formally complained about two co-workers by email to PrimeCare's Corporate Counsel with an Employee Complaint Form attached, and she noted that her issues regarding intermittent FLMA had not been resolved.  Pl.'s Resp. Ex. 3, ECF No. 30-3.

On October 9, 2019, PrimeCare's Corporate Counsel sent Ms. Drys a letter, following up on a telephone conversation, and a confirming email dated October 8, 2019, regarding FMLA payments and Ms. Drys' intermittent FMLA leave.  Drys Dep. Exs. 10, 11.  The letter included written confirmation that the approved FMLA leave was limited to July 9 to August 9, 2019, and a form was included for Ms. Drys' health care provider to complete for FMLA recertification within 15 days if additional FMLA leave was required.  *Id.*  The letter also included a check representing a payroll correction for 8 hours paid time off.  *Id.*  Ms. Drys engaged counsel, who wrote a letter to PrimeCare on October 17, 2019 regarding Ms. Drys' issues with mileage reimbursement and FMLA leave.  Pl.'s Resp. Ex. 4, ECF No. 30-4.  Ms. Drys then responded to PrimeCare's October 9, 2019 letter on October 27, 2019, by email, acknowledging receipt of the letter and form, and requesting clarification for recertifying her FMLA paperwork.  Drys Dep. Exs. 10, 11.  Ms. Drys followed up on October 29, 2019, with the recertification paperwork completed by her provider.  *Id.*  Based on the paperwork received, Ms. Drys was approved for intermittent leave of one time a week with a duration of three days per episode over a six-month period.  *Id.*  She was informed by email from PrimeCare's Employee Relations Specialist on October 31, 2019.  *Id.*  Ms. Drys affirms that as of October 31, 2019, she was approved and paid for all medical leave requested.  Drys Dep. 65.

Also on October 31, 2019, the Director of the Charles County facility called PrimeCare's Chief Operating Officer, Todd Haskins, to inform him that the facility intended to revoke Ms. Drys' security clearance due to a security breach. Haskins Dep. 45-47. Mr. Haskins called Ms. Drys and followed up with a letter, which stated that numerous complaints had been received from the Charles County administration, the Director had expressed the intent to revoke Ms. Drys security clearance, which would result in termination, but it also included an offer to continue employment at the St. Mary's County facility although the reduced hours would result in a gradual salary reduction. Pl.'s Resp. Ex. 8, ECF No. 30-7. The letter also addressed issues related to Ms. Drys' mileage and travel reimbursements. *Id.*

Ms. Drys' security clearance was formally revoked by the Charles County facility's Director of Corrections on November 1, 2019. Drys Dep. Ex. 13. The letter to Mr. Haskins from the Director of Corrections indicated that the primary reason for the revocation of Ms. Drys' security clearance related to an incident that occurred on the afternoon of October 30, 2019, when Ms. Drys "used her personal mobile phone to take pictures of an inmate's personal medical file while it was displayed on a computer screen." *Id.* The Director explained that it was a "serious breach of security, which calls for immediate and permanent revocation of her clearance." *Id.*

Ms. Drys responded to Mr. Haskins' telephone call and letter by email on November 1, 2019. Drys Dep. Ex. 16. She asked some clarifying questions about the transfer to St. Mary's County facility and the reduced salary. *Id.* Mr. Haskins replied by letter on November 5, 2019, largely restating the previous letter but with more detail regarding the gradual salary reduction. Def.'s Mot. Ex. E, ECF No. 27-9. Ms. Drys rejected the offer by email on November 6, 2019. Def.'s Mot. Ex. F, ECF No. 27-10. Mr. Haskins followed up with a revised offer on November 8, 2019, which Ms. Drys rejected on November 11, 2019. Def.'s Mot. Ex. G, ECF No. 27-11; Def.'s

Mot. Ex. H, ECF No. 27-12.  Between November 13 and December 4, 2019, Mr. Haskins provided four additional revised offers, all of which Ms. Drys rejected.  Def.'s Mot. Exs. H-N, ECF Nos. 27-13–27-18.  Finally, on December 7, 2019, PrimeCare's Chief Executive Officer notified Ms. Drys by email that her failure to respond to the most recent offer was accepted as her resignation, and her employment was terminated.  Def.'s Mot. Ex. O, ECF No. 27-19.

Ms. Drys filed her Complaint on February 11. 2021, asserting three causes of action:

- Count I – Maryland Fair Employment Practices Act ("FEPA") for Disability Discrimination
- Count II – Family Medical Leave Act for Retaliation
- Count III – Family Medical Leave Act for Interference

Compl., ECF No. 1. Defendant now seeks summary judgment, stating that her claims fail as a matter of law.  Def.'s Mot. Mem. 3, ECF No. 27-2.  Ms. Drys contends that there are genuine issues of material fact that preclude summary judgment. Pl.'s Resp. 1-2.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides for the judgment in favor of the movant "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In reviewing the evidence related to a motion for summary judgment, the Court considers undisputed facts, as well as the disputed facts viewed in the light most favorable to the non-moving party.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004).  Only factual disputes that "might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Additionally, the factual dispute must be genuine to defeat a motion for summary judgment, in that "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Id.*; *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record. . . a court should not adopt that version."). It is the nonmoving party's burden to confront a motion for summary judgment with affirmative evidence to show that a genuine dispute of material fact exists. *Anderson*, 477 U.S. at 256. A plaintiff nonmovant, "to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor." *Id.*

## ANALYSIS

### I.   FEPA Disability Discrimination

"FEPA prohibits discrimination in employment on the basis of an 'individual's race, color, religion, sex, age, national origin, marital status, sexual orientation, gender identity, genetic information, or disability.'" *Peninsula Regional Med. Center v. Adkins*, 137 A.3d 211, 214, (Md. 2016) (quoting State Gov't § 20-606). Specifically, as it relates to Ms. Drys' disability discrimination claim, FEPA prohibits employers from "'fail[ing] or refus[ing] to make a reasonable accommodation for the known disability of an otherwise qualified employee." State Gov't § 20-606(a)(4). To establish a *prima facie* case for disability discrimination, a plaintiff must show that "(1) she is disabled, (2) she was otherwise qualified for the position, and (3) she suffered an adverse employment action solely on the basis of the disability." *Perry v. Comput. Scis. Corp.*, 429 F. App'x 218, 220 (4th Cir. 2011).[6] If the plaintiff is successful, the burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for its action. *Id.* And if the defendant

---

[6] FEPA is the state law analogue of federal anti-discrimination statutes, and its interpretation is guided by federal cases interpreting the Americans with Disabilities Act. *See Davidson v. Sarnova, Inc.*, No. 17-1067, 2017 WL 5564654, at *4 n.3 (D. Md. Nov. 20, 2017) ("[C]ourts generally treat the analysis of claims under the ADA and FEPA as coterminous."); *see also Peninsula Reg'l Med. Ctr. v. Adkins*, 137 A.3d 211, 223-24 (Md. 2016) ("[L]ook to federal decisions interpreting ADA provisions for guidance in construing similar clauses in FEPA.").

provides such evidence, the plaintiff then bears the burden of showing, by a preponderance of the evidence, that the proffered reason was a pretext. *Id.*

Ms. Drys asserts that she was a qualified individual with a disability, but she does not identify her disability.[7] *See* Pl.'s Resp. 5-6. In her Complaint, she states that she was diagnosed with cancer in June 2019 and notified PrimeCare of her diagnosis and requirement to take time off. Compl. ¶¶ 9-11. Her notification specifically relates to her FMLA request. Drys Dep. Ex. 3. Nevertheless, I assume that Ms. Drys is asserting that her disability is cancer, although she does not indicate how it limited her ability to work at PrimeCare other than the need to take FMLA leave, which she agrees was approved and paid. Importantly, the evidence in the record is that Ms. Drys' employment with PrimeCare ended due to the revocation of her security clearance at the Charles County facility, and the inability of the parties to agree to an ongoing employment agreement. *See* Drys Dep. Exs. 12-13; Pl.'s Ex. 8; Haskins Dep. 45-47; Drys Dep. 87-90; Def.'s Mot. Exs. H-O. Ms. Drys presents no evidence sufficient to create a material question of fact that her alleged disability was a but-for cause of her termination. Accordingly, Ms. Drys cannot establish a prima *facie case* for disability discrimination, and her claim fails as a matter of law.

## II.     FMLA

The FMLA was enacted, in part, "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1)-(2). An employer can violate the FMLA both by interfering with an employee's attempt to exercise FMLA rights and by retaliating against an employee who exercises those rights. *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 546 (4th Cir. 2006).

---

[7]     A "disability" is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). "'[S]ubstantially limiting' means that the impairment must 'significantly restrict' an individual's ability to perform a wide range of jobs." *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 199 (4th Cir. 1997), *overruled on other grounds*.

Pursuant to the FMLA, "an eligible employee is entitled to a total of twelve workweeks of leave during any twelve-month period and, upon return to work, restoration to the position held when the leave commenced or to an equivalent position." *Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 515 (D. Md. 2008) (citing 29 U.S.C. § 2614(a)(1)(A)-(B)).

> To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled.

*Id.* at 516 (citations omitted). The employee also must prove "that the violation prejudiced her in some way." *Anderson v. Discovery Commc'ns, Inc.*, 517 F. App'x 190, 197 (4th Cir. 2013) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); 29 U.S.C. § 2617(a)(1)); *see also Rodriguez*, 545 F. Supp. 2d at 523 (stating that no relief is available if the "violation caused no harm").

Here, Ms. Drys is unable to establish an essential element of an interference claim, i.e., that the employer denied her the FMLA benefits to which she was entitled. Although she complains of delays in communication and payment, she agrees that her claims were approved, and she received all payments she was due. *See* Drys Dep. 65. Accordingly, her interference claim fails as a matter of law.

To establish a claim for retaliation, a plaintiff must first establish that (1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) a causal link exists between the protected conduct and the adverse action. *Yashenko*, 446 F.3d at 551 (citing *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)). If she can make this *prima facie* case, the burden shifts to the defendant to offer a non-discriminatory explanation for the adverse action,

8

and then plaintiff bears the burden of establishing that the proffered explanation is a pretext for FMLA retaliation. *Id.* (citation omitted).

Certainly, there is no dispute that Ms. Drys engaged in a protected activity when she took FMLA leave. Also, there is no dispute that she was terminated. However, as discussed above, Ms. Drys simply cannot satisfy a causal connection between her leave and her termination. The timing of the approval of her intermittent leave coincided with the revocation of her security clearance at the Charles County facility, which might be sufficient to establish a causal connection for a *prima facie* case. *Id.* (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989)). However, PrimeCare has provided un-rebutted evidence that her termination was the automatic result of her losing her security clearance (an action that was initiated by the Correctional Facility, and not as a result of any determination by PrimeCare), and it offered her an alternate position rather than immediately terminating her. It went further and offered multiple revisions of its offer in an unsuccessful effort to come to agreement with Ms. Drys to continue her employment with PrimeCare. Ms. Drys does not offer any evidence to create a genuine issue of material fact that her ultimate termination was caused by her taking FMLA leave. Therefore, Defendant's motion for summary judgment shall be GRANTED.

## CONCLUSION

For the foregoing reasons,

1. Defendant's Motion for Summary Judgment, ECF No. 27, is GRANTED;

2. Judgment shall be entered by separate Order.

Date:   September 6, 2022                              /S/
                                                       Paul W. Grimm
                                                       United States District Judge